UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, | Case No. 2:17-CV-1775 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| SATICOY BAY LLC SERIES 9338 WILDERNESS GLEN AVANUE, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Wilmington Savings Fund Society, FSB's ("Wilmington") motion for summary judgment. (ECF No. 38). Defendant Saticoy Bay LLC Series 9338 Wilderness Glen Avenue ("Saticoy Bay") filed a response (ECF No. 42), to which Wilmington replied (ECF No. 44).

Also before the court is Saticoy Bay's motion for summary judgment. (ECF No. 39). Wilmington filed a response (ECF No. 43), to which Saticoy Bay replied (ECF No. 45).

I. **Facts**

This action arises from a dispute over real property located at 9338 Wilderness Glen Avenue, Las Vegas, Nevada 89178 ("the property"). (ECF No. 1).

Darren Baca and Amy Baca ("the Bacas") purchased the property on or about October 12, 2005. *See* (ECF No. 38-1). The Bacas financed the purchase with a loan in the amount of $448,523.00 from Bank of America, N.A. ("BANA"). *Id*. BANA secured the loan with a deed of trust, which names BANA as the lender and beneficiary, and PRLAP, Inc. as the trustee. *Id*.

On February 9, 2012, defendant Yellowstone Homeowners Association ("Yellowstone"), through its agent Leach Johnson Song & Gruchow ("S&G"), recorded a notice of delinquent

**James C. Mahan**
**U.S. District Judge**

assessment lien ("the lien") against the property for the Bacas' failure to pay Yellowstone in the amount of $973.49. (ECF No. 38-4). On April 27, 2012, Yellowstone recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $1,917.20 as of April 27, 2012. (ECF No. 38-5).

On February 15, 2013, Yellowstone mailed copies of the notice of default to Darren Baca and BANA. (ECF No. 39-7). On March 29, 2014, BANA assigned all beneficial interest in the deed of trust to Wilmington. (ECF No. 38-3). Nine days later, BANA recorded the assignment with the Clark County recorder's office. *Id*. On February 5, 2015, First American Title Insurance Company notified Yellowstone that Wilmington had a security interest in the property. (ECF No. 38-7).

On March 18, 2015, Yellowstone recorded a notice of foreclosure sale against the property, stating that the amount due was $7,218.06 as of March 11, 2015. (ECF No. 38-8). On that same day, Yellowstone mailed copies of the notice of foreclosure sale to BANA. (ECF No. 39-3). On February 25, 2016, Yellowstone sold the property in a non-judicial foreclosure sale to Saticoy Bay in exchange for $176,100.00. (ECF No. 38-10). On May 5, 2016, Yellowstone recorded the foreclosure deed with the Clark County recorder's office. *Id*.

On June 28, 2017, Wilmington initiated this action, asserting four causes of action: (1) quiet title/declaratory relief against all defendants; (2) declaratory relief under the Fifth and Fourteenth Amendments to the United States Constitution against all defendants; (3) quiet title under the Fifth and Fourteenth Amendments of the United States Constitution against all defendants; (4) injunctive relief against Saticoy Bay; and (5) unjust enrichment against all defendants. (ECF No. 1). On July 16, 2018, Saticoy Bay asserted two counterclaims against Wilmington for (1) quiet title and (2) declaratory relief. (ECF No. 33).

Now, Wilmington and Saticoy Bay have filed cross-motions for summary judgment. (ECF Nos. 38, 39).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

The parties have filed cross-motions for summary judgment, disputing whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 38, 39).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y.*

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

James C. Mahan
U.S. District Judge

*Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 38-4, 38-5, 38-8, 38-10). Further, the recorded trustee's deed upon sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 38-10); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Wilmington argues that the court should declare that the deed of trust encumbers the property despite Yellowstone's compliance with Chapter 116 because (1) the mortgage protection clause in the CC&RS preserved the deed of trust and (2) Yellowstone foreclosed on the property pursuant to an unconstitutional statute. (ECF No. 38). The court disagrees.

*a. Mortgage protection clause in the CC&RS*

Wilmington argues that the CC&Rs contain a mortgage protection clause that prevents a Chapter 116 foreclosure sale from extinguishing the deed of trust. (ECF No. 38). However, the Nevada Supreme Court has already held that the language of an HOA's CC&RS cannot alter the nature of a properly conducted non-judicial foreclosure sale pursuant to Chapter 116. *See SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014) ("*SFR*"). In *SFR*, the Nevada Supreme Court held:

> Chapter 116's "provisions may not be varied by agreement, and rights conferred by it may not be waived . . . [e]xcept as *expressly* provided in' Chapter 116. (Emphasis added.) "Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien." *See 7912 Limbwood Court Trust*, 979 F. Supp. 2d at 1153; The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case. *See Boulder Oaks Cmty. Assn v. B & J Andrews Enters., LLC*, 125 Nev. 397, 407, 215 P.3d 27, 34 (2009) (holding that a CC&Rs clause that created a statutorily prohibited voting class was void and unenforceable).

*Id.* Accordingly, Wilmington is not entitled to judgment as a matter of law based the mortgage protection clause in the CC&RS.

*b. Constitutionality of Chapter 116*

Wilmington argues that the court must declare that the deed of trust encumbers the property pursuant to *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154, 1159 (9th Cir. 2016) ("*Bourne Valley*").

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *See Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate the mandatory notice requirement in NRS 107.090. *Id.*

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id.* (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) incorporates NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id.*

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); Therefore, because the Nevada Supreme Court's interpretation controls, Chapter 116 is facially constitutional under the Due Process Clause of the Fourteenth Amendment.

Indeed, the Ninth Circuit has confirmed this court's analysis of Chapter 116. *See Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, No. 17-15796, 2019 WL 1461317 at *3 (9th Cir. April 3, 2019) (holding that (1) *Bourne Valley* no longer applies in light of the Nevada Supreme Court's opinion in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon* and (2) Chapter 116 is not facially unconstitutional under the Due Process Clause of the Fourteenth Amendment).

**IV.    Conclusion**

In light of the foregoing, the foreclosure sale extinguished Wilmington's deed of trust. As there are no pertinent issues left in this litigation, the court will dismiss as moot all remaining causes of action.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wilmington's motion for summary judgment (ECF No. 38) be, and the same hereby is, DENIED.

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that Saticoy Bay's motion for summary judgment (ECF No.
2 39) be, and the same hereby is, GRANTED.
3    The clerk shall enter judgment accordingly and close the case.
4    DATED July 29, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**